The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner of form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right, thank you. Be seated. Ms. Deline, we'll be glad to hear from you. Thank you, Your Honor. Amy Deline on behalf of the appellant, Jason Clem. To start, I'd like to reserve five minutes of my time for rebuttal, please. The decision below should be reversed because the District Court did exactly what the Supreme Court has said is constitutionally prohibited. It made youth and its attendant circumstances irrelevant to the imposition of the harshest sentence available. In the Supreme Court, Miller held that it is the rare juvenile who is irreparably corrupt and who is incapable of rehabilitation. And only for that rare juvenile is life in prison without the possibility of parole a constitutionally permissible sentencing option. Here, the District Court did not consider whether the appellant had been found to be one of those rare juveniles. It did not consider whether he had been found to be irreparably depraved. It did not consider whether he had been found incapable of rehabilitation. Without addressing these central questions, the District Court did not apply the rule that the Supreme Court announced in Miller and did not ensure that the appellant received the sentencing to which he is constitutionally entitled. What are we to make of the fact that the Virginia Court said that it had considered all the evidence in aggravation or mitigation? Yes, Your Honor. I don't make much of it. I think that the Virginia Court was sentencing him seven years in advance of Miller, and so saying it considered mitigating and aggravating evidence is just not sufficient. There's no way the trial court could have predefined what the Supreme Court was going to announce as the standard. My question goes back to the fact that Miller doesn't mandate a result. It mandates a process. And what it says is that one has to be able to take into consideration a number of factors. And the Virginia Court seemed to have believed, said in fact, that it had that discretion and so considered a range of factors. Sure, Your Honor. I think Miller does a little bit more than say that a court has to consider a number of factors. I think Miller and Montgomery say that the court has to consider youth as mitigating factor and youth has to be the central consideration of that sentencing analysis. Where does it say it has to be the central factor in the sentencing analysis? Sure, Your Honor. I think it's in the way that it makes youth the ultimate inquiry. It makes youth a factor that has to be taken into consideration. It was the central factor that I was questioning. Yeah, I think it's the central because the court has said that when you look at the offense, the question is does it reflect transient immaturity or does it reflect irreparable corruption? And the transient immaturity gets to the youth and the characteristics of youth, and so that's the central focus of it. You apparently believe you've exhausted your state remedies. Yes, Your Honor. In Jones, the appellant filed a motion to vacate a sentence because the holding was void of an issue. Why isn't that available to you in this case? Yes, Your Honor. I think it's a two-part answer. One, the state habeas law is clear on its face that there is not a mechanism available. The state habeas law clearly has a time bar in place. But wasn't the Jones defendant faced with that same bar? He was, Your Honor, and I think the motion to vacate that Jones filed as a pro se litigant, I'm not sure it's an effective remedy here. Federal law requires you to go back to state court when it's available and when it's effective. It seemed pretty effective to Mr. Jones so far. He got the Supreme Court to vacate the Virginia Supreme Court's decision, didn't he? He did, but it wasn't effective before the state Supreme Court, which is the state procedure. That sounds to me like you're talking about whether or not he won or not, not whether or not they heard his case. And it's not a question of did he win, the question is did they hear his case and give him an avenue, a potential avenue for relief. Yes, but I think whether or not the Supreme Court allowed him before them is a little bit different. The Supreme Court has never used a motion to vacate to apply a new rule. So the fact that he got there and they didn't rule on whether or not it was a proper mechanism doesn't suggest it is the proper mechanism. Isn't it jurisdictional? It is. So they have to. I mean, they couldn't go to the merits if they didn't have jurisdiction. I believe they had jurisdiction. Yes, Your Honor. So, again, I don't know why you don't view that as an avenue open to you to pursue relief in the state court. Whose problem this is, basically? Yes, Your Honor. I think, again, the state law is pretty clear that habeas is time barred. And the district courts that have ruled on this have all said that there is no... Well, what is the status of Jones today? It's been vacated. It's been vacated. Sorry, Your Honor, go ahead. I mean, what is the status of Jones before the Supreme Court of Virginia? So the decision is being re-heard. It was just re-argued last week. So it was just re-heard last week. Did you attend the argument? I did not. I was busy prepping for my own argument, Your Honor. Did your opposing counsel argue the case in front of the Virginia Supreme Court tonight? I don't believe so. I mean, we could ask him. Yeah, I don't believe so. So we don't have any indication post remand from the Supreme Court of the United States to the Supreme Court of Virginia what the Virginia Supreme Court is going to do on reconsideration. Unless we attended the argument, I suppose we could speculate. That's right. Okay. So how would you answer Judge Traxler? Consider this. Should we at a minimum hold any opinion in this case to see what the Virginia Supreme Court does in Jones? Which, as a practical matter, might happen anyway because it's as efficient as this court is in getting its opinions out. And we're very proud of that, as we should be. I mean, who knows? Maybe the Virginia Supreme Court, which is, I think, equally efficient as we are, might issue something in the next four to six to eight weeks, perhaps. Right? Yes, Your Honor. And I assume that if Virginia Supreme Court actually holds in Jones, in this opinion that's forthcoming, that, yes, we will reach the merits of a Miller claim under these circumstances, then would you then concede or agree or at least not argue against the proposition that you have an available remedy? Or would you say you don't, notwithstanding the one-year period of limitations? Sure, Your Honor. I think it would make it more likely that we would have a remedy available in state court, but I don't know that it would make it a foregone conclusion. How would it not? Sure. I think the circumstances in Jones are slightly different than they are here in that he filed it. Well, the jurisdictional issue is the same, though, isn't it? It is. So regardless of what the Supreme Court does, I think it's the question. With Jones, they have heard it, which seems to go pretty directly to the point about exhaustion. Yes, Your Honor. If we did, as Judge Davis brings up, held cases in federal court in abeyance while we waited to see what happened in the Virginia Supreme Court on Jones and any other activity you might take in state court thereafter in this case, where is the harm to you? I think the harm is that it's subjecting the appellant to procedure that ultimately will not be effective. How do you know? You win. You think you've got a better chance of winning in federal court than you do in state court. I'm not sure that's the effectiveness question. I just think motion to vacate, aside from Jones, the motion to vacate mechanism has been used in Virginia courts for instances where the sentence was outside of what was statutorily allowed. And this is just a different posture. So we are not in the same circumstances in Rawls or in other cases where the motion to vacate was sort of used for its intended purpose. Here, this would, I think, be outside of the purpose of that mechanism. So, yes, certainly if the state Supreme Court ruled on the issue, it would be evidence that there was a mechanism, but I don't know that it would be exhausted. If I were you, I would be worried that if it stays in state court, they're going to make some factual findings that are going to make it really tough for you coming back to federal court. That's exactly the concern, isn't it? I mean, Judge Strachter is absolutely right. I don't see how, frankly, you read what the judge said here as complying with Miller, not remotely, and not just because Miller hadn't been decided yet. But arguably, you know, despite my strong feelings about it, I can easily imagine that there are state judges out there who would read that and say, oh, yeah, the judge said, quote, he's considered all of the evidence in the nature of aggravation or mitigation. I mean, that's nothing. Let's face it, that's nothing. But judges could disagree with me that that's nothing and could somehow interpret that to mean the judge actually recognized that there was discretion and actually consciously decided not to exercise that discretion. And it would be hard for a federal court, I think it would be difficult for a federal court to say that that was an unreasonable finding of fact or an unreasonable application of settled Supreme Court jurisprudence. And that's the danger you face in waiting for Jones. Yes, certainly, Your Honor. We'd rather be here de novo than with the state court having found facts. Could I follow up a little bit on Judge Davis's question? Sure. Setting Jones aside for the moment, if Clem's sentence were vacated and remanded, could the court, consistent with Virginia's sentencing scheme as it stands, take his age into consideration, assuming that it didn't now, with that cursory statement? Could it? Is it prohibited from doing so statutorily? Excuse me, sir. I didn't hear all the questions. If we were to hear it, if we were to hear Miller setting aside the jurisdictional questions, send it back, does the state court have the discretion, in your view, to could Clem's sentence be mitigated or could the district court, consistent with the scheme that exists now, take Clem's age into consideration? Your Honor, I think the statute as it stands is clear that the sentence is mandatory, that it's life without parole. But it isn't. Or rather, it appears that that's what the statute says, but it doesn't appear that that's what is always done. That's why I'm asking, which is the reason for that very cursory, I've considered all the evidence. It certainly seems to suggest that the court felt that it had discretion in that regard. So I'm asking, given that and given the fact that there does appear to be discretion to suspend in whole or in part, why would a state court not be able to do what you are saying it should have done in the first place, is what I'm getting at. Yes, Your Honor. I don't think an ability to suspend satisfies Miller. It doesn't make an otherwise mandatory statute not mandatory. Why, if what Miller's talking about is not the result but the process, and if youth could come into consideration, if youth could be a consideration in the suspension. Certainly, Your Honor, now after Miller, that suspension discretion could be applied in a way that complies with Miller. And that was really all I was asking. I will say that it remains to be seen how Virginia will implement Miller. They haven't started resentencing yet. Yes. Thank you. To just follow up on the mandatory point, I think at the time he was sentenced, at the time the appellant was sentenced, the statute was clearly mandatory. The state argues that there was this ability to suspend. That ability to suspend simply is not sufficient to make an otherwise mandatory statute discretionary. The Supreme Court has said repeatedly that an unfettered right to relief, that is nothing more than theoretical, is simply not enough. And here it really is, in fact, nothing more than theoretical. No juvenile has ever been sentenced to life without parole, anything less than life without parole. And so the statute is clearly mandatory. And as Judge Davis highlighted, there simply was not the consideration of youth in its circumstances that Miller and Montgomery require. There's nothing in the record to suggest that the court considered whether he was capable of rehabilitation, whether he was irreparably depraved. And there's just no reason there would have been. They were sentencing him seven years in advance of Miller, a decade in advance of Montgomery. There's just no way that a trial court would have given sufficient consideration to youth, particularly because- But you can't be saying, I mean, you can't be saying that just because Miller hadn't been decided that a court couldn't have taken youth into consideration in imposing sentence. That can't be your point. My time is up. Is it okay to respond? No, go ahead. I don't think that a court seven years in advance of Miller would have taken youth into consideration in the way that is now constitutionally required. The law has changed. Okay, thank you. Thank you. Mr. Anderson. Good morning. May it please the court. Robert Anderson for the appellee respondent. Let me first address this issue of exhaustion, which of course is something this court needs to decide at the outset, although I will also note that under Section 2244, a federal court has the right to rule in favor of the state on a claim even if it hadn't been exhausted. So I just mention that as a little bit of a qualification. But assuming the court's not inclined to do that, then the threshold question is whether there's been exhaustion. Well, you can see this uncertainty as to whether or not there's been exhaustion, as to whether or not, for example, Virginia Supreme Court would take this case on a motion to vacate the Senate. Well, I think it, based on Montgomery, that it would be constitutionally required to take it. And I'll explain why in a second. At the oral argument in the district court at page 15 of the appendix, the petitioner, and this is sort of not much of a concession because it's obviously the case, the petitioner admitted that Virginia courts should decide the issue, quote, if there was a way for Mr. Clem to be heard in Virginia state court. I think that Montgomery plainly has changed the law and shows that there is a current remedy constitutionally required in the state court. Walk us through that argument. I'll be glad to. That a state court can be constitutionally required to provide a belated post-conviction remedy or process. Yes, sir, I'll be glad to do that, Judge Davis. What are the steps in that argument? Okay. First of all, in the reply brief of the appellant, they accused me of, they said correctly enough, that I had made a lack of exhaustion argument in the district court. And all I've done now in the brief is to substitute Montgomery for Miller as if they were the same thing. They're not. In Montgomery, there are a couple of important holdings. The first one is the one that goes to exhaustion. And let me just read, if I could, read four or five sentences that I think speak for itself. Montgomery said that Miller had said that, well, let me back up. Montgomery said that Miller's holding showed that this was a constitutional rule that fit within the first exception to Teague. Teague normally bars relief on a new rule where cases become final, such as here. But Montgomery said that Miller had made clear that the holding that many juveniles are not constitutionally eligible to get life without the possibility of parole, that that's unconstitutional, and it fits within the first exception to the Teague rule of non-retroactivity. This is, to me, these four or five sentences I'd like to read speak for themselves. This is from Montgomery. A conviction imposed in violation of a substantive rule, which, again, can encompass a sentence as well as a conviction, is not just erroneous but contrary to law and, as a result, void. It follows as a general principle that a court has no authority to leave in place a conviction or sentence that violates a substantive rule regardless of whether the conviction or sentence became final before the rule was announced. If a state may not constitutionally insist that a prisoner remain in jail on federal habeas review, it may not constitutionally insist on the same result in its own post-conviction proceedings. And then we get to perhaps the single most salient thing. As a final point, it must be noted that the retroactive application of substantive rules does not implicate a state's weighty interest in ensuring the finality of convictions and sentences. Teague ruled against the intrusiveness of continually forcing the states to marshal resources in order to keep in prison defendants whose trials and appeals conform to then-existing constitutional standards. This concern has no application in the realm of substantive rules, for no resources marshaled by a state could preserve a conviction or sentence that the Constitution deprives the state of power to impose. That is particularly pertinent because the procedural bars that would normally be available if this individual, Mr. Clem, were to go back to state court would be, one, to say it's time barred under the state's statute of limitations, Section 801-654-A2, and or as an abuse of the writ under 801-654-B2. But the whole point of those two statutes, the policy interest underlying them is finality. Finality rising out of the primacy of the original proceedings. As this last passage I've quoted says that the finality of convictions is not enough to counsel against the retroactive application of new constitutional rules such as Miller. The timing of when the case became final is of no consequence. But none of that means the Commonwealth can't say we're going to let the federal courts clean up this mess. We're not going to reopen post-conviction proceedings in our state courts. We're perfectly happy to have federal judges clean up this mess. Really, I don't think the Supreme Court of the United States has ever said as a matter of constitutional law or doctrine, a state must have a post-conviction proceeding. State doesn't even have to have an appeal. I understand that, but if you look at the dissents in Montgomery and also the dissent in Welch, which we cited under a recent U.S. Supreme Court case that we've cited, they said that never before had the Supreme Court of the United States held that a new constitutional rule was binding on state courts, even after the case became final. Let me put it in concrete terms. If I was in state court next week and dealing with a Miller claim, I would absolutely restrict my defense to the merits of whether what had happened was constitutional. Not because the Supreme Court requires you to do that, but in the exercise of good professional judgment and common sense, you would do that. No, I think the U.S. Supreme Court absolutely would require me to forego any reliance on these procedural bars. Again. Did you argue, Jones? I assume you didn't, because you would have told us after I asked the question of your co-counsel. Yes, I did. Oh, you mean last week? No, I just sat there out of more than an academic interest. Well, I'll put it this way, and I'm not sure what value this has to a federal appellate court, but if I were a betting man, I would be very comfortable with asserting Jones originally held that under state law, particularly section 192-303, which, by the way, this court in Fines v. Muncie cited years ago, it originally said that a life sentence for capital murder is not a mandatory sentence because under 192-303, it can be suspended in whole or in part, and they had other arguments to reach that conclusion, but that was the ultimate conclusion. The one thing that I feel comfortable in saying is, with this case having been vacated and remanded to the Supreme Court of Virginia, I don't think it's going to say, well, upon further thought, further review, we think we got that wrong. We think that it was a mandatory sentence, and we don't know why we invoked section 19.2-303. I don't think that will happen. I think it's much more concerned with any sort of remand to the trial court and what are the parameters of its actions, and the appellate in the reply brief said that I was relying on speculation as to what the Supreme Court of Virginia would do. I don't think I am, but I would fully expect a decision from the Supreme Court of Virginia in this case, that was argued last week as part of its regular docket. I would think there's a heavy presumption that the decision will come out sometime in the next six, seven, eight weeks, and we'll know. And at that point, it won't matter much what my instinct was or whether it was speculation. Where's the harm to you and our holding this in advance until we see how the state process plays out? None whatever. Do you have an affirmative argument on the Virginia statute? My affirmative argument is that the Supreme Court of Virginia is the absolute last word on what a state statute provides. And what does it tell us, in your view? Well, what Jones says is that there's nothing in the capital murder conviction to indicate that it is a mandatory life sentence that's never subject to any further action by a judge. For example, it does not contain the language mandatory minimum sentence. Section 19.2. Council for Appellate said, I think, in closing, and I hope she'll correct me if I'm wrong, that no teenager had ever not been convicted to other than mandatory life. I thought the argument was that none had ever had time suspended, which begs the question of whether it was mandatory. So, again, this isn't... Well, that was my understanding based on today and in past proceedings. I think this is an important point. Remember, federal habeas, the review of a state court judgment is not concerned with whether a state law error was made. It's not concerned with a state law issue at all. It's only concerned with whether there was a federal constitutional amendment. I mean, cases like Estelle v. McGuire, which I think is in my brief, make that clear. So let's suppose either of two. So I think that this emphasis on state law generally is misplaced here, and I'll explain why. Well, it was my question. So let me stay with it for a minute. Is it your view under state law that the trial court would have no discretion to consider youth in sentencing? Oh, absolutely not. It's not true that it would? No. I mean, you look at the case here. You look at the case here, and it's important. The counsel says, and I probably, if I were in her position, I'd be saying the same thing. Well, this judge, he didn't know anything about Miller and Montgomery. They were decided years later. That leaves out the very important backdrop of this case. This case was in the pretrial proceedings in early 2005. A number of the hearings referred to the imminently expected decision of the United States Supreme Court in Roper v. Simmons. The counsel several times said, in so many words, well, maybe we can delay this or that, or my experts should have more time, because we still have that Roper case, which is very important, and it will decide, potentially, whether or not the death penalty should be extended. Death penalty is even a viable option for this defendant. So finally, on March 1, 2005, Roper is decided, and within two or three days later, the attorneys come to court and say, well, we'd reached a plea agreement with the Commonwealth, but in view of Roper, and because it's executory, we're pulling out. The point is, Roper was at the forefront of what was going on at the time, and Roper, what happened? In Miller, and Graham, and Montgomery, wasn't just somewhere out of left field. Roper is a key aspect to everything that happened thereafter. In Miller, the Supreme Court said, quote, Roper and Graham established that children are constitutionally different from adults for purposes of sentencing. So... So you're saying that the court had guidance? Well, it had substantial guidance. But that was actually not quite my question. My question was directed specifically toward discretion under Virginia law. And I think, as Jones plainly held, the court had discretion to sentence, to suspend all or part of the sentence. And remember, Miller and Montgomery keep talking about the specter of someone dying in prison. You know, a juvenile, he'll be serving a longer sentence, a longer period of his life, and he'll be dying in prison. Well, obviously, if your time is suspended, it's not a juvenile. In part or in whole, that concern goes away. I would also... So your argument, if I understand it, I'm confident I do, your argument is that the interplay among the Virginia statutes, despite the seemingly plain language of the statute at issue here, a judge in a capital case, can suspend, you just said, all or part of a sentence of years. So a judge in Virginia could theoretically, I don't mean to be silly, but theoretically could sentence a defendant convicted by a jury of a capital murder to, say, five years. He would have the authority under state law. Yes. And it's not me saying that. And you make this argument, although there is not a single instance, not a single instance, pre-Miller, post-Miller, yesterday, today, as far as we know, of any judge in Virginia ever suspending a life without parole sentence on a juvenile.  And I have to ask you this, and then I'll be quiet. One of the most striking aspects of this case for me, as a former trial judge, why the $100,000 fine, if this judge actually thought there was discretion to do justice, and maybe there's an easy and ready answer for this, why wouldn't the judge at least suspend the $100,000 fine? Is there any possible reason you can offer to us? Two or three points to the various things you've raised. I'm getting old. I haven't had a chance to write them down, so hopefully I'll remember at least 70%. Start with the fine. Okay, the fine, I don't recall that the defense said anything one way or the other at the post-trial sentencing argument about the fine. I think, to be blunt, the fine was the least of this defendant's problems. He's potentially going to prison for decades to come, so I think the fine... Well, no, for life. Not for decades to come, for life. Depending how long he lived, yes. That's the only thing I mean by that. Because juveniles are particularly at risk. Right, and I understand that. And Roper, by the way, Montgomery, which most courts say went beyond the terms of Miller, because it emphasizes distinction between transient immaturity and permanent incorrigibility. That's straight from Roper, which had been decided by the time this defendant was sentenced in our case. So, again, the notion that Miller and Montgomery just tore things and, boy, whatever the law was before, this is just radically different. That is simply wrong factually and legally, because Roper had been decided, and as the court has said in both Montgomery and Miller, Roper is an important component of the holdings in those later decisions. Now, as to, this goes back to a point I started to make. Let's, either of two scenarios. This case ultimately rises and falls with what this particular judge did. Suppose Virginia law, we stipulate, was fine. They were very prescient, and it's fine under Miller and Montgomery. There was, it was not going to be a mandatory sentence, and the judge was required to consider anything and everything relating to this defendant's youth and the case. There's no characteristics attaching to that. State law is fine. And then the trial judge commits an error. He doesn't comply with those state law requirements and imposes a sentence that's not in compliance with Miller and Montgomery. I couldn't point to the state law and say, well, the state law was fine. By the same token, suppose the state law is deemed to be deficient. The trial judge, out of ignorance or whatever, gets it right for purposes of the federal constitution. His sentence is not subject to attack on the basis that, well, he should have reached an unconstitutional sentence. He either reaches a constitutional sentence or he doesn't. I would also point out the certificate of appealability by the district court was very limited in scope. The question was whether or not the sentence by the trial judge, in fact, those two words emphasized, in fact, violated Miller. There's never been the slightest attempt since then to expand the terms, modify the terms of the certificate of analysis. I think that's clearly focusing on what did this judge do, and the state law is of minimal relevance. He either got it right or he didn't, and I don't have time to explain why he got it right, but I submit he did. But under Montgomery, I submit the case is not exhausted and should go back. Thank you. Thank you, Your Honor. Just a few quick points. First to the mandatory question. We think the statute is clear on its face that it was a mandatory law. But not as interpreted. The difficulty that I have is it's discomfiting to not acknowledge what the state Supreme Court says about its own law. So what do we make of that discrepancy? It's a constitutional question. The Supreme Court has said multiple times that a discretionary right to suspend, even if it exists, which the state Supreme Court has said it does, a discretionary right to suspend is not enough. In Solemn v. Helm, they said a theoretical right to clemency doesn't revive an otherwise deficient statute under the Eighth Amendment. We'll have some more guidance on that. We'll have guidance on how the state interprets its own law, certainly. But that doesn't answer the constitutional question of whether this theoretical right to suspend that has never been exercised satisfies the constitutional mandate set forth in Miller v. Montgomery. So you don't think the Supreme Court in Virginia has any option with respect to finding that a sentence of mandatory life in prison has to be imposed, regardless of the factors? I'm not sure I understand the question. But I think the state court is considering whether or not there's a right to suspend. And my point is a right to suspend doesn't satisfy the constitutional question. The Supreme Court in Trevino v. Fowler said the exact same thing. It doesn't make an otherwise mandatory statute not mandatory for constitutional purposes. Second quick point, the Commonwealth focuses on Roper and how Roper had just been decided. I think there are two key points there. One, in Roper the Supreme Court undertook the analysis of youth and took the death penalty off the table. It didn't take mandatory life without parole off the table. So there's no reason a state sentencing judge would have thought, well, I need to undergo this analysis for a sentence that the court hasn't discussed. Montgomery said Miller was a new rule. There's no reason Roper sets forth the analysis that's put in Miller and Montgomery. I think it's also worth noting that after the jury issued its sentence, the defense motioned to have the judge do a formal sentencing and do a pre-sentencing report. And the judge said, hey, I don't think this is necessary, but I'll do it because you've asked for it. Suggests to me that the judge didn't think he had any discretion to depart from what the jury had imposed. The final point, I think, is on the exhaustion question. I think the Commonwealth is now suggesting that it concedes that there's a remedy available in state court. I'm not sure that was the case in its brief. It certainly wasn't the case before the district court. First words out of its mouth would be that there was no state remedy available. And it didn't concede it in Jones. And I don't think the Commonwealth conceding it here now suggests that the Virginia state court would agree. Particularly because the Commonwealth has never recognized an exception to the time bar or to the state habeas law for new rules. Thank you. We'll come down and brief counsel and go into our next case.
judges: William B. Traxler Jr., Allyson K. Duncan, Andre M. Davis